UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| BRENDA HIGHMAN, JAMES GUNTER, and STEVEN LIGHTFOOT, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No.: 3:04-CV-235 (VARLAN/SHIRLEY) |
| 31-W INSULATION CO., INC., ) ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This employment discrimination case is presently before the Court on defendant's Motion to Enforce Settlement Agreement in Opposition to Plaintiff Highman's Pro Se Motion to Set Aside Settlement Agreement. [Doc. 32.]¹ The defendant has filed exhibits with its motion, along with a supporting memorandum. [Doc. 33.] Plaintiff Highman has responded in opposition to the motion [Doc. 34] and has filed multiple *pro se* memoranda. [Docs. 36, 44, 45.] Defendant has submitted a reply memorandum with additional authority. [Doc. 41.] Thus, this matter is now ripe for adjudication. For the reasons that follow, defendant's motion will be granted.

---

¹Plaintiff Highman's motion was an informal request for a new attorney, but contained allegations that her lawyer was "vary [sic] dishonest and deceitful to me" in connection with the settlement agreement currently at issue. [Doc. 31.] In light of the significant leeway afforded to *pro se* litigants, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), defendant was advised by the Court to treat this motion as a motion to set aside the settlement agreement.

## I. Relevant Facts

On May 25, 2004, plaintiffs Brenda Highman, James Gunter, and Steven Lightfoot filed suit against defendant, 31-W Insulation Company, Inc., alleging reverse discrimination in violation of Title VII of the Civil Rights Act of 1964. [Doc. 1.] On August 11, 2005, all plaintiffs and their counsel, Stephen Hyder,[2] met with defendant's counsel, Richard Busch, in Knoxville, Tennessee.[3] During the course of this meeting, the parties reached an oral settlement agreement, which was memorialized in a Statement of Settlement recorded by a court reporter present at the meeting. [Doc. 32, Ex. A.] Among the terms of the settlement, defendant agreed to pay a total of $6,000, with each plaintiff receiving $2,000, for a full release of all claims and a non-admission clause to be contained in a written settlement agreement that would be drafted after the meeting. [Doc. 32, Ex. A at 3.] Defendant also agreed to issue plaintiffs 1099 forms in the full settlement amount and required that plaintiffs neither seek reinstatement, apply for employment with defendant, nor disclose the amount of the settlement. [Doc. 32, Ex. A at 3-4.] Following this negotiation and alleged agreement, Notice of Settlement was given to the Court on August 17, 2005 and as a result, the Court entered an order denying all pending motions as moot. [Doc. 30.]

---

[2]Subsequent to the settlement agreement negotiations that took place in this case, Mr. Hyder filed a Motion to Withdraw as Attorney for Plaintiffs Brenda Highman and Steven Lightfoot. on November 18, 2005. [Doc. 39.] The Court issued an order granting this motion on December 7, 2005. [Doc. 43.]

[3]It is not clear from the record whether the purpose of this meeting was to negotiate a settlement agreement or to conduct a deposition, as plaintiff Highman alleges in one of her responses. [Doc. 45.]

On September 7, 2005, Mr. Hyder sent a letter to Mr. Busch requesting that Mr. Busch send him the settlement documents that were agreed to "on the record on August 11, 2005." [Doc. 32, Ex. C.] The Settlement Agreement and Full and Complete Release ("Settlement Agreement") was delivered to Mr. Hyder on September 12, 2005. [Doc. 32 at ¶ 5.] This document reflects the terms agreed upon by the parties at the August 11, 2005 negotiation. [Doc. 32, Ex. D.]

On September 30, 2005, plaintiff Highman filed a motion with the Court requesting that Mr. Hyder "be dismissed from my case. He has been vary [sic] dishonest and deceitful to me and you." [Doc. 31.] In the letter, plaintiff Highman further claims that "I, in person told him I was not agreeing to settle this case on aug. [sic] 12th." [*Id.*] In her reply to defendant's motion, plaintiff Highman alleges that the oral agreement reached on August 11, 2005 "was made by the two lawyers not the plaintiffs in this case" and that Mr. Hyder "made a settlement agreement without us understanding what he was doing." [Doc. 34.]

In a letter sent from Mr. Hyder to plaintiff Highman on December 14, 2005 discussing the meeting where the alleged settlement agreement was entered into, Mr. Hyder noted that while plaintiff Highman "argued with me about the proposed settlement," she "never flatly stated to me at that time that [she] would not settle." [Doc. 45, Ex. B at 2.] Mr. Hyder's letter also notes that "[w]hen Mr. Busch thereafter asked us 'on the record' if we had agreed to settle, I answered in the affirmative; however, you remained silent. At that point, I believed that you were in agreement with the settlement." [*Id.*]

3

Defendant filed the pending motion on October 14, 2005. Plaintiff Gunter subsequently filed a Motion to Enforce Settlement Agreement as to Plaintiff James Gunter on November 15, 2005. [Doc. 37.] Plaintiff Gunter signed the Settlement Agreement and returned it to defendant on September 26, 2005. [Doc. 37 at ¶ 2.] Plaintiffs Highman and Lightfoot have not signed or returned their copies of the Settlement Agreement. Plaintiff Lightfoot has never responded to any of the motions involved in this dispute, and the time for doing so has passed. *See* L.R. 7.1(a), 7.2.

## II.     Legal Analysis

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir.), *cert. denied*, 429 U.S. 862 (1976). A federal court possesses this power "even where the agreement has not been arrived at in the presences of the court nor reduced to writing." *Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 621 (6th Cir. 1973). However, before enforcing settlement on the parties, the district court must conclude that agreement has been reached on all material terms. *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988). In so determining, the Sixth Circuit advises courts to consider whether the objective acts of the parties reflect that an agreement has been reached. *Re/Max Int'l, Inc. v. Realty One, Inc.,* 271 F.3d 633, 646 (6th Cir. 2001).

Ultimately, the Court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement. *Brock*, 841 F.2d at 154. No evidentiary

4

hearing is required where an agreement is clear and unambiguous and no issue of fact as to the agreement is present. *Aro Corp.*, 531 F.2d at 1372. Thus, summary enforcement of a settlement agreement has been deemed appropriate where no substantial dispute exists regarding the entry into and terms of an agreement. *Kukla*, 483 F.2d at 621; *cf. Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000) (recognizing that summary proceedings may result in inequities when a dispute exists as to a material term).

In the present case, there is no dispute that there was an agreement reached to settle this case on August 11, 2005. The parties orally agreed to a specific amount, along with other terms, and that oral agreement was memorialized by the court reporter present at the settlement negotiation. The written Settlement Agreement subsequently sent to plaintiffs accurately reflects that oral agreement.

While it is admittedly difficult to decipher the arguments presented in her various filings, plaintiff Highman seems to argue that any settlement agreement should not be enforced because she told Mr. Hyder the day after the oral agreement was entered into that she "was not agreeing to settle the case." [Doc. 31.] There is nothing in plaintiff Highman's filings, however, to suggest she manifested any unwillingness to settle this case prior to or at the settlement negotiations held on August 11, 2005. In fact, the December 14, 2005 letter from Mr. Hyder that plaintiff Highman submits as her own exhibit evidences that she never said she was unwilling to settle the case, nor did she object when Mr. Busch asked plaintiffs whether they had agreed to settle. [Doc. 45, Ex. B at 2.] Additionally, plaintiff Highman's contentions that "said agreement was made by the two lawyers not the plaintiffs in this case"

5

and that all plaintiffs did not understand that they were entering a settlement agreement on August 11, 2005 seem untenable given that plaintiff Gunter attests in his Motion to Enforce Settlement Agreement that "the parties to this action reached a settlement of this action," an agreement that he went on to execute. [Doc. 37 at ¶¶ 1-2.] Furthermore, the Court notes that plaintiff Highman did not object to Mr. Hyder sending Mr. Busch a letter on September 7, 2005 demanding that he prepare the agreed-upon settlement documents [Doc. 32, Ex. C], which is precisely the kind of objective act the Sixth Circuit has found to be sufficient evidence of agreement. *Re/Max Int'l Inc.,* 483 F.2d at 646.

Plaintiff Highman simply seems to have developed misgivings after entering into the oral settlement agreement on August 11, 2005. After-the-fact sentiments, however, do not merit setting aside an otherwise complete settlement agreement. Accordingly, the parties will be bound by the specific terms of their settlement agreement.

### III. Conclusion

For the reasons set forth herein, defendant's Motion to Enforce Settlement Agreement [Doc. 32] is hereby **GRANTED**, and the parties' settlement agreement is enforced as written. Accordingly, plaintiff Gunter's Motion to Enforce Settlement Agreement [Doc. 37] is **DENIED as moot**. It is hereby **ORDERED** that:

1. Within ten (10) days from the entry of this memorandum and order, plaintiffs Highman and Lightfoot shall execute the settlement document and release as agreed; and

2. Within twenty (20) days from the entry of this memorandum and order, the parties shall electronically file either a joint stipulation of dismissal with prejudice pursuant to Fed. R. Civ. P. 41(a)(1) or a proposed order of dismissal with prejudice.

The Court will consider all available remedies for the failure to comply with the terms of this order.

IT IS SO ORDERED

s/ Thomas A. Varlan<br>UNITED STATES DISTRICT JUDGE